IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

PATRICIA LOVE and             :
GREGORY GARRETT,              :
                             :
   Plaintiffs,          :
                             :
v.                           :      CIVIL ACTION
                             :      No. 3:12-CV-87 (CAR)
SAFECO INSURANCE COMPANY     :
OF INDIANA,                  :
                             :
   Defendant.           :
_____     :

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This action involves a homeowner's insurance policy ("Policy") issued by Defendant Safeco Insurance Company of Indiana ("Safeco").  Plaintiffs Patricia Love and Gregory Garrett seek coverage under the Policy for damages resulting from a June 6, 2011 fire that destroyed their home and its contents.  Safeco refuses to pay for the loss and instead asserts that Plaintiffs' Policy is void because Plaintiffs misrepresented (1) their prior loss history; (2) a three-year gap in coverage on the property; and (3) cancellation of a prior insurance policy.  This matter is now before the Court on the parties' respective motions for summary judgment.  Having considered the parties' arguments, the record, and applicable law, Safeco's Motion for Summary Judgment [Doc. 19] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' Motion for Partial Summary Judgment [Doc. 18] is likewise **GRANTED IN PART** and **DENIED**

**IN PART**.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[2]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]

In reviewing a motion for summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[4] While the Court is not obligated to comb through the record in search of evidence, it is not limited to those pieces of evidence the parties have singled out for attention.[5]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions,

---

[1] Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[3] *See id.* at 249-52.

[4] *See id.* at 254-55; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[5] *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); *Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987).

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[7]

## BACKGROUND

Plaintiffs purchased 103 Carlton Avenue, Union Point, Georgia (the "Property") in 1998.[8]  From February 9, 2007, through May 26, 2008, the Property was insured under a homeowner's insurance policy issued by Foremost Insurance Company ("Foremost Policy").[9]  Plaintiffs made two claims for losses under the Foremost Policy for:   (1) fire damage occurring on May 10, 2007, and (2) theft of personal property on January 3, 2008.[10]   On May 26, 2008, Foremost cancelled Plaintiffs' policy for non-payment of premium, and Plaintiffs did not obtain another policy on the Property for almost three years—until May 2, 2011, when they obtained the Policy in question.[11]

Before Plaintiffs obtained the Policy on May 2, 2011, Plaintiffs had begun to fall

---

[6] *Celotex,* 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed.R.Civ.P. 56(e); *see also Celotex,* 477 U.S. at 324-26.
[8] *See* Love Dep. 44:1-3 [Doc. 21].
[9] *Id.* at 48:7-24.
[10] *Id.* at 55:4-23; 57:7-12.
[11] *Id.* at 63:2, 6-16; 64:13-24; 91:5-8.

behind on payments to their mortgage holder, CitiMortgage.[12]   In response, CitiMortgage agreed to consider short-sale of the Property or loan modification in lieu of foreclosure.[13]   Pending approval of these alternatives, however, CitiMortgage directed Plaintiffs to obtain insurance coverage for the Property.[14]   Plaintiffs' quest to obtain insurance was largely unsuccessful.[15]   From the first quarter of 2010, Patricia Love spoke with five or six different insurance companies, all of which demanded a high premium or denied coverage outright based on Plaintiffs' insurance history.[16]

After several failed attempts, Plaintiff Love called Esurance and spoke with an agent acting on Safeco's behalf.[17]   In response to the Esurance agent's questions, Plaintiff Love disclosed her previous fire loss under the Foremost Policy and explained that her previous policy had expired because her husband failed to pay the premium.[18]   Based on this information, the Esurance agent entered Plaintiff Love's information into a shared access "Quote and Issue System," which permits an agent to immediately bind policies if the information satisfies certain underwriting criteria.[19]   In this case, the Esurance agent bound the Policy underwritten by Safeco.[20]   The Policy

---

[12] *Id.* at 27:20-24; 68:15-17.
[13] *Id.* at 68:21-25; 69:1-5.
[14] *Id.* at 88:10-25; 89:1-5.
[15] *Id.* at 99:23-100:7.
[16] *Id.* at 97:10-18; 98:15-100:7.
[17] *Id.* at 98:8-10.
[18] Verbal Application to Esurance ("Verbal Application") at 9, 13-14 [Doc. 19-3].
[19] Barone Aff. ¶ 10 [Doc. 19-5].
[20] Barone Aff. ¶ 7.

contained, among other things, a policy limit of $267,100 for loss of the dwelling and up to $133,550 for loss of personal property, subject to a $1,000 deductible.[21]   Plaintiffs later signed a pre-printed application, making some corrections, and representing therein that the Property had sustained no losses in the previous five years.[22]   Plaintiffs also represented that their property insurance had not been "cancelled, declined, or non-renewed in the last 5 years."[23]

After the Policy issued, Safeco underwriter Shira Scott conducted a Comprehensive Loss Underwriting Exchange ("C.L.U.E.") review, a routine post-issuance review, which uncovered a prior theft loss on the Property in addition to the fire loss Plaintiff Love had disclosed.[24]   According to Safeco's underwriting guidelines in effect at the time, any undeclared loss would result in either the rejection of the application or an increase in the premium charged for the policy.[25]   Accordingly, upon discovery of Plaintiffs' undisclosed loss, Scott processed a cancellation of the Policy effective as of June 22, 2011.[26]   Safeco sent a notice of cancellation to Plaintiffs on May 18, 2011.[27]   Plaintiffs paid an additional premium to continue the Policy until the June

---

[21] Safeco Policy, Plaintiffs' Motion for Partial Summary Judgment, Ex. 2 [Doc. 18-4 at 19].
[22] Written Application, Barone Aff., Ex. 2 at 8 [Doc. 19-5].
[23] *Id.* at 9.
[24] Barone Aff. ¶ 18.
[25] *Id.*
[26] *Id.*
[27] Golden Dep. 14:21-25, Ex. 17 [Doc. 22].

22, 2011 cancellation date.[28]

On June 6, 2011, sixteen days before the cancellation date, a fire destroyed the Property.[29]   Plaintiffs reported the loss shortly thereafter.[30]   Robin Golden, one of Safeco's claims adjusters, first spoke with Plaintiff Love regarding the loss on or about June 10, 2011.[31]   Sometime later, Plaintiffs produced a list of their damaged personal property or "Contents Valuation Report" upon Safeco's request.[32]   In light of the Policy application discrepancies and the fire, Golden assigned Waylon Howell of Safeco's Special Investigations Unit to investigate Plaintiffs' claim beginning on June 28, 2011.[33]

On July 6, 2011, Plaintiff Love inaccurately informed Howell that the Property had not been insured for two, rather than three, years prior to Safeco's Policy and that her prior carrier had cancelled coverage, not because of failure to pay, but because of her two prior losses.[34]   Plaintiff Love provided the same erroneous information when she testified under oath on September 20, 2011.[35]

Howell's investigation continued until October 2011 when he presented his findings to several members in Safeco's claims department during a "triage"

---

[28] Billing Statement, Plaintiffs' Motion for Partial Summary Judgment, Ex. 3 [Doc. 18-5]; Cancelled Check, Plaintiffs' Motion for Partial Summary Judgment, Ex. 4 [Doc. 18-6].
[29] Love Dep. 160:23-161:9.
[30] Golden Dep. 11:10-16.
[31] *Id.* at 17:18-20.
[32] *Id.* at 27:23-29:11.
[33] *Id.* at 21:5-11.
[34] Love Recorded Statement, Ex. 14 at 13-14 [Doc. 21-14].
[35] Love Examination Under Oath 51:12-13, Safeco Reply, Exhibit B [Doc. 33].

conference call.[36]  Based on Howell's findings and Plaintiffs' misrepresentation of the prior losses, the claims department recommended voiding Plaintiff's Policy and notified the underwriting department for further action to that effect.[37]  Brian Barone, Safeco's Senior Personal Lines Underwriting Manager, received the claims department's recommendation to rescind the Policy.[38]  After reviewing the recommendation and the underwriting file, Barone sought final approval to void the Policy from underwriting leadership.[39]

In notices dated February 7, 2012, and February 13, 2012, both the claims department and underwriting department notified Plaintiffs of Safeco's decision to void the Policy.[40]  Both notices informed Plaintiffs that the investigation had revealed the undisclosed theft loss and that Safeco would not have issued the Policy had Plaintiffs revealed this information.[41]  The underwriting letter included a refund check for coverage from May 2, 2011 to June 22, 2011.[42]

On June 4, 2012, Plaintiffs filed a complaint against Safeco in the Superior Court of Greene County seeking full payment of the Policy proceeds, bad faith damages, and attorney's fees and costs.  Safeco removed the action to this Court on July 3, 2012.  On

---

[36] Golden Dep. 31:13-15.
[37] *Id.* at 33:16-21; 40:1-10.
[38] Barone Aff. ¶ 4; Barone Dep. 11:10-12.
[39] Barone Dep. 11:24-25; 12:1-4; 26:2-14.
[40] Claims Letter Voiding Policy, Ex. 16 [Doc. 21-16]; Underwriting Letter Voiding Policy, Ex. 18 [Doc. 21-18].
[41] Claims Letter Voiding Policy, Ex. 16; Underwriting Letter Voiding Policy, Ex. 18.
[42] Underwriting Letter Voiding Policy, Ex. 18.

February 14, 2013, Plaintiffs filed a Motion for Partial Summary Judgment [Doc. 18] on

the application of the Georgia Valued Policy Statute, O.C.G.A. § 33-32-5.  The same

day, Safeco filed its global Motion for Summary Judgment [Doc. 19] on all claims.  The

parties have responded to these motions, and they are now ripe for adjudication.

## DISCUSSION

Safeco asserts that it validly rescinded Plaintiffs' Policy when it learned of

Plaintiffs' material misrepresentations in her oral and written insurance applications.

Alternatively, in the event the Court finds the Policy was not void, Safeco asserts that

the Policy's terms supersede the Georgia Valued Policy Statute which, in certain

circumstances, requires an insurer to pay the full face value of the insured's policy.

Plaintiffs counter that Safeco waived its right to deny coverage because (1) upon

learning of the undisclosed prior loss, Safeco chose to cancel the Policy effective June

22, 2011, rather than voiding it; and (2) Safeco failed to immediately rescind the Policy

upon learning of Plaintiffs' misrepresentations regarding the gap in coverage and the

prior cancellation.

The Court first addresses Safeco's Motion for Summary Judgment [Doc. 19] on

the issues of Plaintiffs' material misrepresentations and bad faith damages before

concluding with an analysis of Plaintiffs' Motion for Partial Summary Judgment [Doc.

18] on the application of the Georgia Valued Policy Statute.   Because federal

jurisdiction over this matter is based on diversity, Georgia law governs the Court's

analysis of these substantive issues.[43]

**I.      Material Misrepresentations in Plaintiffs' Application**

Safeco asserts Plaintiffs made the following material misrepresentations in their

insurance application, which bar their recovery under the terms of the Policy:

(1) Plaintiffs had suffered one, rather than two, prior losses during the five years

preceding their Safeco application; (2) there had not been a gap in insurance coverage

on the Property; and (3) their prior Foremost Policy had not been cancelled.   The

Policy explicitly states that Safeco does "not provide coverage for any insured who

has: (a) intentionally concealed or misrepresented any material fact or circumstance; or

(b) made false statements or engaged in fraudulent conduct relating to this insurance

at the time application was made or any time during the policy period."[44]

**a.   Materiality of Misrepresentations**

Georgia Code § 33-24-7(b) addresses material misrepresentations and their

effect upon insurance policy recovery.   It provides:

> Misrepresentations, omissions, concealment of facts, and incorrect
> statements shall not prevent a recovery under the policy or contract
> unless:
>
> (1) Fraudulent;

---

[43] *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 11254, 1257 (11th Cir. 2011).
[44] Policy §§ I & II, ¶ 2 [Doc. 18-4 at 43, 52].

9

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.[45]

In other words, to void an insurance policy under this statute, an insurer must demonstrate (1) the existence of a misrepresentation, omission, concealment of facts, or incorrect fact made by or on behalf of an insured and (2) the materiality of such facts, omissions, or misrepresentations.[46]   Accordingly, the Court considers the existence of each misrepresentation before addressing its materiality.

First, Safeco must demonstrate that Plaintiffs provided false information in their application for insurance.  "[T]he Supreme Court of Georgia has specifically eschewed any need for the insurer to show that the [insured] was aware of the falsity of the representation or statement in order to void a policy under subsections (2) or (3)" of O.C.G.A. § 33-24-7.[47]   As such, it is immaterial whether Plaintiffs intended to defraud Safeco or acted in good faith in completing their applications.[48]

Here, the undisputed evidence demonstrates that Plaintiffs misrepresented both

---

[45] O.C.G.A. § 33-24-7(b).

[46] *See* O.C.G.A. § 33-24-7(a), (b); *see also Oakes v. BlueCross/BlueShield*, 170 Ga. App. 335, 336 (1984).

[47] *White v. Am. Family Life Assurance Co.*, 284 Ga. App. 58, 61 (2007).

[48] *Davis v. John Hancock Mut. Life Ins.*, 202 Ga. App. 3, 5 (1991).

the number of losses on the Property and the Foremost Policy cancellation.  Although Plaintiff Love disclosed the May 10, 2007 fire loss in her verbal application, she failed to reveal the January 3, 2008 theft loss.  Plaintiffs later claimed no losses had occurred in the five years preceding their written application.  Likewise, Plaintiff Love misrepresented the Foremost Policy cancellation when she told the Esurance agent that her previous policy had "expired" because her husband had not paid the premium; in fact, Foremost had cancelled the policy for non-payment.[49]  Plaintiffs then noted that their property insurance had not been "cancelled, declined or non-renewed in the last 5 years" in their written application to Safeco.[50]

On the other hand, Plaintiffs did not misrepresent the three-year gap in coverage.  As a general rule, an insurer cannot assert an insured misrepresented a fact unless the insurer has inquired about the fact or apprised the prospective insured of the need for proper disclosure of the fact in question.[51]  In this case, Safeco does not allege that Plaintiffs were aware the three-year gap would be relevant to Safeco's risk assessment, and neither the verbal nor written application prompted Plaintiffs to disclose that information.  Moreover, a reasonable juror could find that Plaintiff Love did alert Safeco to a possible gap in coverage when she told the Esurance agent that her

---

[49] Verbal Application at 7.
[50] Written Application at 9.
[51] *See, e.g.*, *Block v. Voyager Life Ins. Co.*, 251 Ga. 162 (1983); *Ga. Farm Bureau Mut. Ins. Co. v. First Fed. Sav. Loan Ass'n*, 152 Ga. App. 16 (1979).

Foremost Policy had expired.  Thus, the Court finds that Plaintiffs misrepresented their prior number of losses and the Foremost Policy cancellation, but they did not misrepresent the three-year gap in coverage.

Having determined that Plaintiffs misrepresented the number of prior losses and the Foremost Policy cancellation, Safeco must demonstrate that each particular misrepresentation, regardless of why it was made, was material to its acceptance of coverage.[52]  "A material misrepresentation is one that would influence a prudent insurer in deciding whether to assume the risk of providing coverage."[53]  More specifically, a material misrepresentation is one that "change[s] the nature, extent, or character of the risk."[54]  Materiality is ordinarily a jury question unless "the evidence excludes every reasonable inference except that it was material."[55]  Accordingly, if an "insurer presents an <u>uncontradicted</u> statement by its underwriter that the company would not have issued the policy as applied for based on its policy regarding the specific risk, summary judgment for the insurer on the materiality issue is appropriate."[56]  In this case, Safeco relies on the affidavit of Brian Barone, Safeco's Senior Personal Lines Underwriting Manager.

There is no question that Plaintiffs materially misrepresented the Property's

---

[52] *Thompson v. Permanent Gen. Assurance Corp.*, 519 S.E.2d 249, 250 (Ga. Ct. App. 1999).
[53] *Nappier v. Allstate Ins. Co.*, 961 F.2d 168, 170 (11th Cir. 1992).
[54] *Oakes*, 170 Ga. App. at 336 (quotation omitted).
[55] *Taylor v. Ga. Int'l Life Ins. Co.*, 207 Ga. App. 341, 342 (1993).
[56] *Dracz v. Am. Gen. Life Ins. Co.*, 427 F. Supp. 2d 1165, 1170 (M.D. Ga. 2006).

prior loss history.  In his affidavit, Barone explains that the loss history of a dwelling is a material underwriting factor to Safeco in deciding whether to issue a policy of insurance.[57]   To support his assertion, Barone points to Safeco's underwriting guidelines in effect in May 2011, which mandated that any undeclared loss would result in either the rejection of the application or an increase in the premium charged for the policy.[58]   Plaintiffs do not challenge Barone's assertions, and the record otherwise supports Safeco's position.  Accordingly, the Court concludes that Plaintiffs materially misrepresented the prior loss history of their Property.

Safeco, however, has not demonstrated that Plaintiffs' mischaracterization of their prior cancellation amounted to a material misrepresentation.  On this point, Barone asserts that prior cancellations, declinations, and non-renewals are material underwriting factors for Safeco and disclosure of such—whether in a verbal or written application—automatically triggers referral to an underwriter for review to determine if Safeco will ultimately agree to insure the risk.[59]   Barone insists that "[h]ad Plaintiffs provided accurate information in either the verbal application or on the written application that prior coverage had been cancelled due to non-payment of premium … Safeco would not have agreed to insure this risk."[60]

---

[57] Barone Aff. ¶ 19.
[58] *Id.* at ¶ 18.
[59] *Id.* ¶ 15.
[60] *Id.*

Plaintiffs dispute Barone's statements, asserting that Plaintiff Love did tell the Esurance agent, "without using the specific words, that the prior policy had been cancelled or non-renewed."[61]   In other words, although Plaintiffs erroneously stated that their previous policy had expired for non-payment, this error did not "change[] the nature, extent or character of [Safeco's] risk."[62]  In fact, both Barone's Affidavit and Safeco's written application suggest that the risks of cancellation and expiration are equivalent.  Barone draws no distinctions between these events when he claims that "[i]f an applicant states in either a verbal application or in the written application … that a prior policy has been <u>cancelled, declined or non-renewed</u>, such information will automatically trigger referral to an underwriter for review."[63]  Likewise, the written application asks only if the applicant's "property insurance been <u>cancelled, declined or non-renewed</u> in the last 5 years."[64]  Based on this information, a reasonable juror could find that while Plaintiffs misrepresented the Foremost Policy cancellation, their misstatements were not material to Safeco's assumption of risk since it was aware that the Foremost Policy had essentially been non-renewed for the same reason.  If there is a distinction between expiration and non-renewal for non-payment or cancellation for non-payment that changes an insurer's risk, Safeco has not carried its burden by

---

[61] Plaintiffs' Response to Safeco's Statement of Material Facts at 5 [Doc. 30-2].
[62] *Nappier v. Allstate Ins. Co.*, 766 F. Supp. 1166, 1168 (N.D. Ga. 1991) (quoting *Oakes*, 170 Ga. App. at 336).
[63] Barone Aff. ¶ 15.
[64]  Written Application at 9.

establishing that distinction in the instant Motion.[65]   Thus, the Court finds a genuine

issue of material fact as to whether Plaintiffs made a material misrepresentation with

respect to the Foremost Policy cancellation.

### b.  Waiver of the Material Misrepresentation

Plaintiffs contend that even if Safeco was initially unaware of Plaintiffs' prior

loss history, it waived its right to void the Policy based on this material

misrepresentation.   The Court agrees.   Under Georgia law, waiver is defined as

follows:

> [W]aiver may be express or may be inferred from actions, conduct or a
> course of dealing.  Waiver of a [policy] right may result from a party's
> conduct showing his election between two inconsistent rights. Acting on
> the theory that the [policy] is still in force, as by continuing performance,
> demanding or urging further performance, or permitting the other party
> to perform and accept or retaining benefits under the [policy], may
> constitute waiver of a breach.   However, all the attendant facts, taken
> together, must amount to an intentional relinquishment of a known right,
> in order that a waiver may exist.[66]

Expanding upon this general definition, Plaintiffs advance a proposition from *Florida*

*International Indemnity Company v. Osgood*[67] that, if an insurer seeks to rescind a policy

based on a misrepresentation, it must "upon discovery of the facts, at once announce

---

[65] The Court draws no distinction between expiration and non-renewal as the two are apparently indistinguishable.  *See, e.g.*, *Mass. Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 353-54 (1990) (citing O.C.G.A. § 33-24-46).

[66] *Smith v. Gordon*, 266 Ga. App. 814, 815 (2004).  The Court substitutes the term "contract" with "policy" for purposes of clarity.  Legally, this is a distinction without a difference; insurance policies are governed by the same general rules as any other contract under Georgia law.  *See, e.g.*, *State Farm Fire & Cas. Co. v. Goodman*, 259 Ga. App. 62, 63-64 (2002).

[67] 233 Ga. App. 111 (1998).

[its] purpose and adhere to it.  Otherwise, [it] cannot avoid or rescind such contract."[68]
In *Osgood*, the insurer did not declare the policy void upon learning of the insured's
misrepresentation; instead, the insurer advised the insured that it would not renew the
policy in question at the expiration of its term.[69]  In essence, *Osgood* and its sister cases
forbid insurers from discovering a basis for voiding a policy, advising the insured they
will have continued coverage through the expiration of its term, and later claiming
that the policy is void.[70]

In this case, Safeco clearly waived its right to void the Policy based on the
undisclosed theft loss.  Only days after the Policy issued, Safeco conducted a C.L.U.E.
review, which uncovered the prior theft loss on the Property, as well as the fire loss
Plaintiff Love had disclosed in her conversation with the Esurance agent.[71]
Accordingly, on May 18, 2011, Safeco advised Plaintiffs that their insurance coverage
would continue until June 22, 2011, and billed Plaintiffs $90.28 for coverage until that
time.[72]  Safeco's cancellation notice and billing statement advised Plaintiffs that the
Policy was alive and well, giving every indication that the Policy remained in full force
and effect.  Having chosen to cancel the Policy prospectively, despite its knowledge of

---

[68] *Id.* at 113 (quoting *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853, 855 (1989)).

[69] *Id.* at 114.

[70] *In re Int'l Mgmt. Assocs.*, No. 06-62966, 2012 WL 2105908, at *14 (N.D. Ga. Bankr. Apr. 3, 2012) (citing *State Farm Fire & Cas. Co. v. Jenkins*, 167 Ga. App. 4 (1983); *Loeb v. Nationwide Mut. Fire Ins. Co.*, 162 Ga. App. 561 (1982)).

[71] Barone Aff. ¶ 18.

[72] *Id.*; Billing Statement, Plaintiffs' Motion for Partial Summary Judgment, Ex. 3; Cancelled Check, Plaintiffs' Motion for Partial Summary Judgment, Ex. 4.

Plaintiff's material misrepresentation, Safeco waived its right to claim the Policy void *ab initio* based on this same information.  Consequently, Safeco's Motion for Summary Judgment [Doc. 19] is **DENIED IN PART** with respect to Plaintiffs' material misrepresentations.

## II.   <u>Bad Faith Damages</u>

Although Plaintiffs' may seek coverage under the Policy, their claim for bad faith penalties fails as a matter of law.  Under O.C.G.A. § 33-4-6, an insured may recover bad faith penalties when an insurer refuses to pay a claim in "bad faith."[73] Under Georgia law, "bad faith" is defined as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policy to pay according to the terms of the policy."[74]  The insured bears the burden of showing that the insurer's refusal to pay the claim was made in bad faith.[75]  Although the question of bad faith is generally reserved for the jury at trial, bad faith claims may be resolved as a matter of law if an insurer has "any reasonable ground to contest the claim" based on a question of law or issue of fact.[76]  In this case, Safeco had reasonable grounds to contest Plaintiffs' claim.

First, Plaintiffs materially misrepresented their prior loss history in their verbal and written application to Safeco.  Both the insurance application and the Policy

---

[73] O.C.G.A. § 33-4-6.
[74] *Royal Ins. Co. v. Cohen*, 105 Ga. App. 746, 747 (1962).
[75] *Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2004).
[76] *Colonial Life, etc., Co. v. McClain*, 243 Ga. 263, 265 (1979).

provided that material misrepresentations voided the Policy, which would release Safeco from its obligation to pay.  Safeco's subsequent waiver of this particular defense is not evidence of bad faith and does not change the fact that Plaintiffs misrepresented their prior loss history.  A defense to a bad faith claim is separate and distinct from a void *ab initio* defense.[77]  Second, as discussed above, the record presents a genuine issue of material fact as to whether Plaintiffs materially misrepresented their cancellation history.  The existence of a factual dispute is a complete defense to a bad faith claim and justifies refusal to pay.[78]

In short, even assuming Safeco erroneously denied coverage, its actions were not frivolous or unfounded, and there is no other evidence in the record to suggest Safeco denied Plaintiffs' claim in bad faith.  In fact, Plaintiffs offer no evidence to refute Safeco's position but merely assert that under their "view of the case" Safeco's refusal to pay was "made without substantial justification."[79]  The Court finds no support for Plaintiffs' conclusion either in fact or law.[80]  Accordingly, Safeco's Motion for Summary Judgment [Doc. 19] is **GRANTED IN PART** with respect to Plaintiffs'

---

[77] *Osgood*, 233 Ga. App. at 115.

[78] *Moon v. Mercury Ins. Co. of Ga.*, 253 Ga. App. 506, 508 (2002).

[79] Plaintiffs' Response at 20 [Doc. 30].

[80] Plaintiffs appear to derive this "substantial justification" language from O.C.G.A. § 9-15-4, which provides for the recovery of attorney's fees and litigation expenses when a party asserts a claim, defense, or other position which completely lacks any "substantial justification."  "Georgia case law, however, clearly establishes that O.C.G.A. § 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds, and that claims for attorney's fees and litigation expenses under other Georgia statutes are not authorized."  *Adams v. Unum Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1319 (N.D. Ga. 2007).

statutory claim for bad faith damages and attorney's fees.

**III.**   **Georgia Valued Policy Statute**

Having resolved Safeco's Motion, the Court now considers Plaintiffs' Motion for Partial Summary Judgment [Doc. 18].  Therein, Plaintiffs ask the Court to find the Georgia Valued Policy Statue controls their recovery in this case and, therefore, to grant judgment against Safeco for the value of the Policy: $266,100.  As an initial matter, the Court **DENIES** Plaintiffs' request for judgment against Safeco; the Court cannot determine Safeco's liability as a matter of law at this point in the proceedings. However, the Court finds that Plaintiffs are entitled to recover the value of the Policy if they prove their case at trial.

The Valued Policy Statute provides as follows:

> Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property, except to the extent of any depreciation in value occurring between the date of the policy or its renewal and the loss, provided that, if loss occurs within 30 days of the original effective date of the policy, the insured shall be entitled to the actual loss sustained not exceeding the sum insured.  Nothing in this Code section shall be construed as prohibiting the use of coinsurance or as preventing the insurer from repairing or replacing damaged property at its own expense without contribution on the part of the insured.[81]

---

[81] O.C.G.A. § 33-32-5(a)

Based on this statute, Plaintiffs contend they are entitled to recover the $267,100 face value of the Policy, minus their $1,000 deductible.  In opposition, Safeco argues (1) that the Valued Policy Statute is superseded by the Policy's requirement that Plaintiffs actually repair or replace the Property to receive the dwelling coverage limit or, alternatively, (2) Safeco reserves the right to rebuild the Property at its own cost, rather than paying the coverage limits, pursuant to the Policy and the Valued Policy Statute.

First, the Policy does not require Plaintiffs to repair or replace the Property as a prerequisite to recovery of its "actual cash value" or face value.[82]  As Safeco clarifies in its Response, under the Policy "as in most property insurance policies, the insured must actually repair or replace in order to recover <u>replacement costs</u>."[83]  By its express terms, the Policy permits the Plaintiffs to "disregard the <u>replacement cost</u> settlement provisions and make [a] claim under this policy for loss or damage to buildings on an <u>actual cash value</u> basis."[84]   Plaintiffs have done so; they seek the actual cash value or the applicable limit of liability rather than replacement cost with its attendant repair/replacement provision.[85]   In turn, the Valued Policy Statute "conclusively" establishes the Property's actual value as the "amount of insurance set forth in the policy"; in this case, $267,100 minus the $1,000 deductible.

---

[82] *See* Policy, § I, ¶ 5(a) [Doc. 18-4 at 34]; *see, e.g., Hanover Ins. Co. v. Hallford*, 127 Ga. App. 322, 325-26 (1972).

[83] Safeco's Response to Plaintiffs' Motion for Summary Judgment at 11 [Doc. 27] (emphasis added).

[84] Policy, § I, ¶ 5(a)(4) [Doc. 18-4 at 34] (emphasis added).

[85] *See, e.g., Hanover Ins. Co.*, 127 Ga. App. at 325-26.

Second, although the Valued Policy Statute states that "[n]othing in this Code section shall be construed as … preventing the insurer from repairing or replacing damaged property," this provision does not give insurers an absolute right to replace property destroyed by fire.[86]  Rather, this statute must be read in conjunction with "all statutes relating to the same subject-matter, briefly called statutes 'in pari materia' … and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto."[87]  Accordingly, the Valued Policy Statute must be read in conjunction with O.C.G.A. § 33-32-3, which provides that "[t]he privilege of rebuilding or reinstating property sustaining loss or damage shall not exist unless it is reserved in the policy."[88]  Thus, to the extent that an insurer has any "right" to rebuild or replace property, it is governed by the express terms of the insurance policy.

In this case, the Policy required Plaintiffs to submit a sworn proof of loss within sixty days of Safeco's request for the information.[89]  Upon its receipt of a sworn proof of loss, Safeco reserved a limited "Option" to repair or replace or replace damaged property:  "If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with

---

[86] *See* O.C.G.A. § 33-32-5.

[87] *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1996) (quotation omitted).

[88] O.C.G.A. § 33-32-3.

[89] Policy, § I, ¶ 3(g) [Doc. 18-4 at 33].

equivalent property."[90]   Now, Safeco contends that it never received Plaintiffs' sworn proof of loss, and accordingly, that Safeco still has the right to replace the Property in lieu of paying the actual value of the Property.   However, based on the undisputed evidence in the record, the Court concludes that Safeco waived its right to demand proof of loss and, in turn, its option to replace the Property.

Pursuant to O.C.G.A. § 33-24-39, an insurer must furnish a proof of loss form "upon written request or written notice of a loss."[91]   "Failure or refusal to furnish the form upon written request or written notice of loss … constitute[s] waiver of the right of the insurer to require proof of loss."[92]   Completed inventory sheets qualify as written notice of a loss for purposes of this statute.[93]

In this case, Plaintiffs produced a list of their damaged personal property or "Contents Valuation Report" upon Safeco's request.[94]   This list placed Safeco on notice of the loss and triggered its obligation to promptly furnish a proof of loss form in accordance with O.C.G.A. § 33-24-39.   However, there is no evidence in the record that Safeco ever provided Plaintiffs with a proof of loss form, and over two years have passed since Plaintiffs submitted written notice of their loss.   No reasonable jury could find Safeco is now entitled to demand proof of loss from Plaintiffs.   Consequently,

---

[90] Policy, § I, ¶ 9 [Doc. 18-4 at 35].

[91] O.C.G.A. § 33-24-39 (emphasis added).

[92] *Id.*; *see, e.g.*, *Williams v. Southern Gen. Ins. Co.*, 211 Ga. App. 867, 867-68 (1994); *Britt v. Indep. Fire Ins. Co.*, 184 Ga. App. 225, 227 (1987).

[93] *Britt*, 184 Ga. App. at 227.

[94] Golden Dep. 27:23-29:11.

Safeco waived the proof of loss requirement by failing to provide Plaintiffs with a proof of loss form upon receiving written notice of their loss.

Having waived its right to proof of loss, Safeco cannot exercise its option to replace the Property.  "[A] superfluous proof of loss submitted after litigation has commenced does not … revive a clause itself dependent upon a provision of the policy that has already been waived."[95]   Here, the repair/replacement clause cannot be invoked without compliance with its terms, which must be strictly construed against Safeco as the drafter.[96]   The clause specifically requires Safeco to provide written notice of its decision to repair or replace the property within 30 days after receiving the proof of loss.[97]   Thus, having waived the proof of loss provision, Safeco cannot insist on it for any purpose—including its related option to replace the property.[98]

Accordingly, Plaintiffs' Motion for Partial Summary Judgment [Doc. 18] is **GRANTED IN PART** and **DENIED IN PART**.   Plaintiffs may recover $266,100 pursuant to the Georgia Valued Policy Statute if they successfully prove their case at trial against Safeco's material misrepresentation defense.   The Court cannot rule as to the question of Safeco's ultimate liability under the Policy in light of the remaining genuine issue of material fact.

---

[95] *Williams*, 211 Ga. App. at 868.

[96] *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334–35 (1989).

[97] Policy, § I, ¶ 9 [Doc. 18-4 at 35].

[98] *Id.*

**CONCLUSION**

As set forth above, Safeco's Motion for Summary Judgment [Doc. 19] is

**GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' Motion for Partial Summary

Judgment [Doc. 18] is likewise **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED,** this 27th day of September, 2013.

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

BBP/ssh

24